O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CHERYL HOGLE,                         )    NO. EDCV 09-00129-MAN
                                      )
              Plaintiff,              )
                                      )    MEMORANDUM OPINION
        v.                            )
                                      )    AND ORDER
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
              Defendant.              )
_____)

    Plaintiff filed a Complaint on February 2, 2009, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for supplemental security income ("SSI").   On
March 10, 2009, the parties consented to proceed before the undersigned
United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).   The
parties filed a Joint Stipulation on October 7, 2009, in which:
plaintiff seeks an order reversing the Commissioner's decision and
awarding benefits or, in the alternative, remanding the matter for
further administrative proceedings; and defendant seeks an order
affirming the Commissioner's decision.   The Court has taken the parties'
Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 11, 2002, plaintiff filed a prior application for SSI, alleging an inability to work since March 26, 2002, due to depression, anxiety, high blood pressure, and diabetes. (Administrative Record ("A.R.") 11, 69-71, 84.) Plaintiff has past relevant work experience as a fast food restaurant cook, retail store stocker, and grocery store clerk. (A.R. 97.)

The Commissioner denied the application initially and upon reconsideration. (A.R. 45-48, 50-54.) On November 20, 2003, plaintiff testified at a hearing before an administrative law judge. (A.R. 23-42.) On January 27, 2004, the administrative law judge denied plaintiff's application. (A.R. 11-19.) The Appeals Council subsequently denied plaintiff's request for review. (A.R. 4-6.)

On April 30, 2004, plaintiff protectively filed the current application for SSI. (A.R. 213, 273-76.) Plaintiff alleged an inability to work since December 31, 1996, due to anxiety, depression, high blood pressure, and diabetes. (A.R. 292.) The Commissioner denied the second application initially and upon reconsideration. (A.R. 238-42, 247-51.) On February 2, 2005, plaintiff filed a request for a hearing by an administrative law judge. (A.R. 252.) On March 26, 2006, plaintiff failed to appear at a hearing before Administrative Law Judge Lowell Fortune ("ALJ Fortune"). (A.R. 391.) Plaintiff's attorney was present at the hearing, during which Sandra Fioretti, a vocational expert, and Michael Kania, a medical expert, testified. (A.R. 391-409.) On May 19, 2006, ALJ Fortune denied plaintiff's application on the

merits, noting that *res judicata* did not apply because there was a change in plaintiff's age category since the previous application (the "2006 Decision"). (A.R. 213-19.)   On September 8, 2006, after the Appeals Council denied plaintiff's request for review of the ALJ Fortune's decision, plaintiff initiated proceedings in this District Court to appeal the 2006 Decision. (A.R. 432.)   This Court reversed the Commissioner on the bases that ALJ Fortune:   improperly disregarded the opinion of plaintiff's therapist; did not properly evaluate plaintiff's credibility; and failed to consider the side effects of plaintiff's medications. (A.R. 436-44.)   This Court remanded the matter for further proceedings consistent with its decision. (A.R. 445-46.)

On August 5, 2008, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Joseph D. Schloss. (A.R. 512-28.)   Abbe May, a vocational expert, and Dr. William Soltz, a medical expert, also testified. (*Id.*)   On September 16, 2008, Administrative Law Judge Jay E. Levine (the "ALJ") denied plaintiff's application upon remand. (A.R. 412-19.)   The ALJ incorporated the 2006 Decision by reference and stated that it remained the decision of record as supplemented by his decision. (A.R. 413.)   The Appeals Council subsequently denied plaintiff's request for review. (Joint Stipulation ("Joint Stip.") at 2.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity since April 15, 2004, the protected application filing date. (A.R. 414.)   The ALJ determined that plaintiff had the severe

impairments of: noninsulin dependent diabetes mellitus; controlled hypertension; anxiety disorder, not otherwise specified; and depressive disorder, not otherwise specified. (*Id.*) The impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 415.)

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 [C.F.R.] 416.967(b) except stand-walk frequently, i.e., six out of eight-hours with customary breaks, stand or walk frequently, occasional climbing, stooping, kneeling, crouching, and crawling, no exposure to temperature extremes or hazards such as unprotected heights or dangerous moving machinery, frequent handling and fingering, no rapid conveyor belt type or other fast paced work, routine repetitive tasks, entry level work, and work involving things rather than people.

(A.R. 416-17.) The ALJ found that plaintiff was unable to perform any of her past relevant work. (A.R. 418.) Considering plaintiff's age, education, work experience, and RFC, as well as relying on testimony from the vocational expert, the ALJ found that jobs existed in the national economy that plaintiff can perform, including laundry sorter, labeler-packer, and mail clerk-sorter. (A.R. 418-19.)

Accordingly, the ALJ concluded that plaintiff was not disabled, as defined in the Social Security Act, since April 15, 2004. (A.R. 419.)

4

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d
at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse
the Commissioner's decision if it is based on harmless error, which
exists only when it is "clear from the record that an ALJ's error was
'inconsequential to the ultimate nondisability determination.'" <u>Robbins
v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(quoting <u>Stout v.
Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d
at 679.

**DISCUSSION**

Plaintiff alleges the following four issues:  (1) whether the ALJ
properly considered the type, dosage, and side effects of plaintiff's
medications; (2) whether the ALJ properly considered plaintiff's
obesity; (3) whether the ALJ properly considered the treating
physician's opinion; and (4) whether the ALJ properly considered
plaintiff's testimony concerning her treatment for depression.  (Joint
Stip. at 2-3.)

**I.   <u>There Is No Reversible Error With Respect To The ALJ's
Consideration Of The Side Effects Of Plaintiff's Medications</u>.**

Plaintiff contends that the ALJ failed to consider the type,
dosage, and side effects of plaintiff's medications.  Specifically,
plaintiff argues that:  her prescribed Zoloft made her sleepy;
unspecified medications caused her to sustain weight gain; she
complained of decreased energy and insomnia; and the ALJ misrepresented
her medical record.  (Joint Stip. at 3-4.)

Pursuant to Social Security Ruling ("SSR") 96-7p, an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." However, an ALJ need only consider those medication side effects that have a "'significant impact on an individual's ability to work.'" Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993) (citation omitted).

The claimant "bears the burden of proving that a medication's side effects are disabling." Short v. Astrue, 648 F. Supp. 2d 1185, 1191 (C.D. Cal. 2009); see also Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002)(rejecting claim that administrative law judge improperly excluded the side effects of medication, because there was no objective evidence that the claimant's medications caused the side effects she alleged and her testimony in this respect properly was found to be not credible); Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (rejecting challenge to administrative law judge's finding that claimant's medications did not preclude him from working, when claimant did not produce any "clinical evidence showing that narcotics use impaired his ability to work," and thus, he did not meet his burden of proving that his claimed impairment was disabling). The ALJ is not obligated to consider a claimant's allegations of side effects when the claimant has "provided no evidence to support this claim other than a statement in his daily activities questionnaire." Hopkins v. Astrue, 227 Fed. Appx. 656, 2007 WL 1120146, at *1 (9th Cir. 2007). This is so because "'a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings.'" Id. (quoting Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985)). Even "passing mentions

7

1    of the side effects" in some medical records would be insufficient in
2    the absence of evidence of side effects "severe enough to interfere with
3    [a claimant's] ability to work."   Osenbrock v. Apfel, 240 F.3d 1157,
4    1164 (9th Cir. 2001).

6          On May 25, 2004, plaintiff stated in her Disability Report that her
7    prescription medicine, Zoloft, made her sleepy.[1]  (A.R. 296.)  However,
8    six months later, on November 22, 2004, plaintiff stated in her
9    Disability Report – Appeal that she experienced no side effects from any
10   of her medications, including Zoloft. (A.R. 312.)  The medical evidence
11   is consistent with that representation, as several medical reports
12   repeatedly note that plaintiff had no complaints of side effects from
13   her medications, which included Zoloft. (See, e.g., A.R. 383 - report
14   dated April 23, 2005, 385 - illegible report date, 467 - report dated
15   April 7, 2006.)  It appears that, as of June 2007, plaintiff stopped
16   taking Zoloft.[2]  Even if -- and this is far from clear -- Zoloft caused
17   drowsiness sufficient to functionally limit plaintiff's ability to work
18   for some period of time that ended prior to November 22, 2004, the
19   record indicates that plaintiff did not experience any such side effect
20   for the requisite 12 month durational requirement.[3]  See 42 U.S.C. §
21   1382c(a)(3)(A).  Accordingly, notwithstanding the Court's prior remand

23   _____
24   1    Plaintiff also reported that her other medications caused no side effects. (A.R. 296.)

25   2    In June 2007, plaintiff complained to her treating physician that
26   she did "not feel that Zoloft works." (A.R. 463.)  The prescriptions
     listed in the physician's notes from that date onward do not include
     Zoloft. (A.R. 457, 460-63.)

28   3    The period of disability commenced no earlier than April 15, 2004. (A.R. 414.)

order, the ALJ did not err with respect to his consideration of any side effect plaintiff experienced based on Zoloft.[4]

With respect to plaintiff's contention that "weight gain" is a side effect of her medication that the ALJ should have addressed, plaintiff testified, in August 2008, that she weighed 196 pounds and had gained "[a]bout 40 pounds" in the prior couple of years due to her medication. (A.R. 521-22.) Plaintiff's medical records reveal, however, that plaintiff's weight has been consistent throughout the relevant period, and plaintiff has weighed approximately 200 pounds since 2002. (*See, e.g.*, A.R. 130, 367, 381, 460-66, 522.) Thus, contrary to plaintiff's testimony, the evidence clearly demonstrates that weight gain was not a side effect of her medications. Significantly, plaintiff does not challenge the ALJ's finding that her testimony concerning serious medication side effects was not credible. (A.R. 416.)

Plaintiff's contentions that the ALJ misrepresented the medical record and failed to consider other relevant evidence, such as plaintiff's increased dosage for certain medications and her complaints of "decreased energy" and "insomnia" are all red herrings. (Joint Stip. at 4.) As plaintiff acknowledged, her treating physician increased her medication dosages to control her diabetes. (A.R. 457, 521.) Although increases in dosages of medication can indicate that an impairment has worsened or is out of control, plaintiff fails to identify any limitations, symptoms, or side effects from the increased dosages and

---

4    The ALJ *did* address the June 2007 medical note of plaintiff's treating physician and correctly observed that plaintiff's complaint about Zoloft was that it was ineffective, not that it was causing her adverse side effects. (A.R. 416.)

1  fails to establish that any such limitations, symptoms, or side effects
2  are severe enough to interfere with her ability to work.   Further,
3  plaintiff did not take medications from June 2007, through February
4  2008.  (A.R. 462.)   Thus, the fact that the physician had to increase
5  and re-adjust plaintiff's dosages can be reasonably attributed to
6  plaintiff's nearly year long lack of treatment.

8      Plaintiff's June 2007 complaint to her physician of decreased
9  energy and insomnia appears to relate to plaintiff's general health and
10 claimed impairments, rather than to side effects of her medications.
11 (*See* A.R. 463.)   There is no evidence whatsoever that any of plaintiff's
12 medications caused her to experience decreased energy or insomnia.  She
13 did not so testify at any of her hearings, and as noted above, she
14 indicated "none" when asked to identify medication side effects in her
15 disability reports.  (A.R. 23-42, 296, 312, 519-24.)  Moreover, the ALJ
16 acknowledged plaintiff's June 2007 complaint of decreased energy and
17 insomnia and further observed that plaintiff's physician prescribed
18 Trazadone to aid her sleep in June 2007, and June 2008.  (A.R. 414,
19 *citing* A.R. 457 and 463.)

21     Finally, the ALJ did not misrepresent the medical record when he
22 wrote that, in July 2007, plaintiff's treating physician prescribed for
23 her both Cymbalta and Trazadone, "but there is only a prescription for
24 Trazadone noted by July 2008." (A.R. 414.)  Reading the ALJ's sentence
25 in proper context, including with his record citations to A.R. 457 and
26 463, it is clear that the ALJ was referring to the fact that the list of
27 medications set forth in the physician's June 2008 note did not include
28 Cymbalta.  The ALJ did not misstate the record.

There is no basis for finding that the ALJ committed error in connection with the consideration of the side effects of plaintiff's medication.

**II.  The ALJ Properly Considered Plaintiff's Obesity.**

Obesity is no longer, nor was it at the time of the ALJ's decision, a listed impairment.  See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria, 64 F.R. 46122 (effective October 25, 1999)(delisting 9.09, "Obesity," from Appendix 1, Subpart P of Part 404, the listing of impairments).  Although obesity is not a listed impairment, as a general rule, an ALJ must determine the effect of a claimant's obesity upon her other impairments and ability to work.  Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003); see also SSR 02-01p (requiring an ALJ to consider the effects of obesity at several points in the five-step sequential evaluation).  An ALJ must "evaluate each case based on the information in the case record," as obesity may or may not increase the severity or functional limitations of other impairments.  SSR 02-01p.

As discussed above, since 2002, when plaintiff, who is five foot six inches, filed her first application for SSI, she weighed approximately 200 pounds.  (A.R. 130.)  Plaintiff argues that the ALJ failed to consider the impact of plaintiff's obesity at the "various stages of the disability determination process."  (Joint Stip. at 9.)  Plaintiff specifically contends that the ALJ failed to consider the impact of her obesity in making the step two and three determinations.  (*Id*.)  Plaintiff is wrong.

In the proceedings before the Commissioner, neither plaintiff nor her attorney claimed that plaintiff's obesity constituted a disabling impairment.  Rather, plaintiff repeatedly claimed to be disabled as a result of four asserted impairments -- diabetes, hypertension, anxiety disorder, and a depressive disorder -- and the ALJ found, at step two, that plaintiff has those four impairments, and they are severe.  (See A.R. 84, 292, 391-409, 414, 512-28.)  Plaintiff presented no evidence that her obesity exacerbates her other impairments, limits her functioning, or impairs her ability to work, whether alone or in combination with her four impairments.  The only medical evidence plaintiff provided concerning her obesity was treatment notes recommending that she lose weight prior to the alleged disability period (A.R. 134), but nothing that discussed any limitations her obesity imposed upon her.  Given the lack of any medical evidence that plaintiff's obesity exacerbated her impairments or resulted in any functional limitation, as well as the failure of plaintiff -- a represented claimant -- to claim to be disabled based on obesity, whether as an impairment or a source of functional limitations, the ALJ's failure to address plaintiff's obesity at step two was not error. See Burch, 400 F.3d at 682 (finding no reversible error, notwithstanding the ALJ's failure to consider obesity at step two, because, as in this case, there was no evidence that plaintiff's obesity exacerbated other impairments and plaintiff was represented by counsel).

The ALJ also did not err in failing to address plaintiff's obesity at step three.  "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an

12

effort to establish equivalence." _Burch_, 400 F.3d at 683; _see also_
_Lewis v. Apfel_, 236 F.3d 503, 514 (9th Cir. 2001)(rejecting claimant's
argument that the ALJ failed to adequately explain his finding that his
impairments did not equal a listing, in part, because claimant failed to
proffer a theory as to how the impairments equaled a listing).
Plaintiff has neither pointed to any evidence of any functional
limitations due to her obesity nor identified evidence showing that her
impairments met or equaled any listing. _See_ _Burch_, 400 F.3d at 682
(stating that the ALJ did not commit reversible error by failing to
consider plaintiff's obesity at step three when there was no evidence of
functional limitations due to plaintiff's obesity). Indeed, plaintiff
did not even specify which listing she purportedly met or equaled, much
less proffer a theory of how she equaled a listing based on the
combination of her impairments and obesity. _See id._ at 683 (affirming
the district court's assertion that plaintiff "'bears the burden of
proving that . . . she has an impairment listed in Appendix 1 of the
Commissioner's regulations'"); _see also_ _Swenson v. Sullivan_, 876 F.2d
683, 687 (9th Cir. 1987)(holding that a claimant carries the initial
burden of proving a disability).

Further, the ALJ's decision reflects that he considered plaintiff's
obesity in his RFC determination. In his decision, the ALJ expressly
incorporated the 2006 Decision and stated that it remained the decision
of record as supplemented by his 2008 Decision. (A.R. 413.) In the
2006 Decision, ALJ Fortune considered the Internal Medical Evaluation
written by Dr. Rocely Ella-Tamayo, who examined plaintiff in May 2004.
(A.R. 217, 365-69.) Taking into consideration, among other things,
plaintiff's _weight_, diabetes, and high blood pressure, Dr. Ella-Tamayo

opined that plaintiff had no significant functional limitations. (A.R. 367-69.) Despite this finding, ALJ Fortune determined that plaintiff should be restricted to light work with only occasional stooping and crawling. (A.R. 216.) ALJ Levine imposed further restrictions in his RFC assessment, limiting plaintiff to occasional climbing, kneeling, and crouching and no rapid conveyor belt type or other fast paced work. (A.R. 416-17.) Based on the ALJ's inclusion of limitations beyond those found by the examining physician, the Court finds that the ALJ considered plaintiff's obesity in his RFC determination.[5]

The ALJ did not commit reversible error, because in view of the evidence presented, he was not required to give further consideration to plaintiff's obesity.[6]

---

5   To the extent that the ALJ did not explicitly refer to plaintiff's obesity in his RFC determination, the Court finds that omission, if error at all, to be harmless. The ALJ's analysis expressly incorporated Dr. Ella-Tamayo's medical opinion that plaintiff had no significant functional limitations, which was reached after the examining physician considered plaintiff's diabetes, high blood pressure, and obesity. Moreover, plaintiff has not proffered any evidence that her obesity has limited her ability to function and/or work, or has exacerbated any other medical ailment from which she suffers. *See* Burch, 400 F.3d at 683-84 (finding the ALJ's failure to consider obesity was not reversible error, where there was no evidence that claimant's obesity limited her functioning, and the only evidence related to obesity was doctor's observation of weight gain, notation of obesity, and recommendation that claimant participate in weight loss program).

6   The present case is distinguishable from the Ninth Circuit's decision in Celaya, *supra*. In that case, the Ninth Circuit held that, despite the claimant's failure to raise obesity as a disabling factor, the ALJ erred in determining the effect of the claimant's obesity upon her other impairments and ability to work, because:

> [f]irst, it was raised implicitly in [claimant]'s report of symptoms. Second, it was clear from the record that [claimant]'s obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses. Third, in light of [claimant's] pro se status, the ALJ's observation of [claimant] and the

14

**III.  The ALJ Properly Considered The Treating Physician's Notes.**

It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(d)(1)-(2).  The opinions of treating physicians are entitled to the greatest weight because the treating physician is hired to cure and has a better opportunity to observe the claimant.  Magallanes, 881 F.2d at 751.  Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).  Where contradicted by another doctor, the ALJ may not reject the opinion of a treating physician without providing "specific and legitimate" reasons supported by substantial evidence in the record.  *Id.*

information on the record should have alerted him to the need to develop the record in respect to her obesity.

Celaya, 332 F.3d at 1182.  The Court further noted that "[t]he ALJ's exclusion of obesity from his analysis [wa]s error in that he was addressing an illiterate, unrepresented claimant who very likely never knew that she *could* assert obesity as a partial basis for her disability."  *Id.*(emphasis in original).  Unlike the claimant in Celaya, plaintiff is not "extremely obese" and was represented by counsel in her proceedings before the Commissioner, as well as here.  This case is more akin to the situation considered by the Ninth Circuit in Burch, *supra*, in which no reversible error was found.  Moreover, and critically, the medical record suggests that the only factor that has exacerbated plaintiff's condition is not her weight –– which has remained at approximately 200 pounds since 2002 –– but rather, her  failure, at times, to take her prescribed medication.  *See* discussion *infra*.

15

Dr. Sean R. Thomas, a general practitioner, has been plaintiff's treating physician since 2006. (*See, e.g.*, A.R. 467.) The record indicates that Dr. Thomas saw plaintiff five times between April 2006, and June 2007 (A.R. 463-67), and began treating her again in February 2008 (A.R. 462). Dr. Thomas' notes reflect that plaintiff was being treated for diabetes, hypertension, and depression. (*See, e.g.*, A.R. 457, 462.) At each of plaintiff's examinations, someone at Dr. Thomas' office took and noted plaintiff's weight, blood pressure, and blood sugar level. (*See, e.g., id.*) Dr. Thomas did not render any opinions about plaintiff's limitations, physical or mental.

Plaintiff contends that the ALJ failed to properly consider Dr. Thomas' opinion regarding her hypertension. (Joint Stip. at 9-10, 12.) Plaintiff further argues that the ALJ misleadingly represents that plaintiff's hypertension is controlled. (*Id.* at 13.)

Plaintiff's argument is flawed. The ALJ did not consider Dr. Thomas' opinion regarding plaintiff's hypertension, because there was no opinion to consider. Treatment notes, in general, are not medical opinions. *See* 20 C.F.R. 416.927(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), . . . what you can still do despite impairment(s), and your physical or mental restrictions."). Here, the treatment notes do not provide any indication of Dr. Thomas' opinions regarding plaintiff's impairments or limitations. With regard to plaintiff's hypertension in particular, the notes simply contain a nurse's notation of plaintiff's blood pressure reading at each visit.

16

The ALJ's determination that plaintiff's hypertension is severe clearly demonstrates that the ALJ considered Dr. Thomas' notes. (A.R. 414.) The ALJ's finding that plaintiff's hypertension is controlled was based on his analysis of the evidence and is not misleading or inaccurate. *See* Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("the ALJ must develop the record and interpret the medical evidence"). Plaintiff is correct that from February 2008, through May 2008, she had several high blood pressure readings. (A.R. 457, 460-62.) Plaintiff, however, conveniently omits some pertinent facts: (1) her hypertension was well-controlled when she was on her medications prior to June 2007 (*see, e.g.,* A.R. 367, 380-81); (2) she did not take any blood pressure medication from June 2007, through February 2008 (A.R. 462); and (3) plaintiff's last blood pressure reading in June 2008, after four months of medication, was 122/82 (A.R. 456). The ALJ reasonably concluded that plaintiff's hypertension is controlled with medication. *See* Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Accordingly, the ALJ properly considered the treating physician's notes.

**IV.  It Was Not Reversible Error For The ALJ To Characterize Plaintiff's Treatment For Depression As Erratic.**

Plaintiff alleges that the ALJ failed to provide clear and convincing reasons for rejecting her testimony regarding her lack of treatment for depression. (Joint Stip. at 16-18.) Specifically, plaintiff contends that the ALJ "unfairly interpreted [her] testimony in

1  terms most unfavorable to her and then rejected it based upon his own
2  speculative and unsupported inferences and assumptions." (*Id.* at 17.)
3  Although somewhat awkwardly framed as a credibility issue, it appears
4  that plaintiff's actual argument is that the ALJ improperly relied on
5  his alleged mischaracterization of her testimony about the treatment she
6  has received for her depression as the basis for concluding that her
7  mental impairments do not render her unable to work.   Even as so
8  liberally construed, the Court does not find reversible error.

10     Once a disability claimant produces objective evidence of an
11  underlying impairment that is reasonably likely to be the source of her
12  subjective symptom(s), all subjective testimony as to the severity of
13  the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885
14  (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.
15  1991)(*en banc*); *see also* 20 C.F.R. § 416.929(a) (explaining how pain and
16  other symptoms are evaluated).   "[U]nless an ALJ makes a finding of
17  malingering based on affirmative evidence thereof, he or she may only
18  find an applicant not credible by making specific findings as to
19  credibility and stating clear and convincing reasons for each."
20  Robbins, 466 F.3d at 883.   The factors to be considered in weighing a
21  claimant's credibility include:   (1) the claimant's reputation for
22  truthfulness; (2) inconsistencies either in the claimant's testimony or
23  between the claimant's testimony and her conduct; (3) the claimant's
24  daily activities; (4) the claimant's work record; and (5) testimony from
25  physicians and third parties concerning the nature, severity, and effect
26  of the symptoms of which the claimant complains.  *See* Thomas, 278 F.3d
27  at 958-59; *see also* 20 C.F.R. § 416.929(c).
28

In her application papers, plaintiff stated that she has panic attacks around people and poor concentration and memory. (A.R. 292, 313.) At the August 5, 2008 hearing, plaintiff testified that she has anxiety attacks in public and has poor concentration, but she has not had any breakdowns and is not suicidal. (A.R. 522-23.) From 2004, through the date of the decision[7], the medical records indicate that plaintiff saw a psychiatrist or mental health specialist fewer than ten times, all in 2004. (A.R. 354-64.) From 2006, to 2008, plaintiff saw a general practitioner, but no mental health specialist. (A.R. 456-67.) Plaintiff testified that she did not see a mental health specialist and could not "get any help for [her] depression," because there are no services available where she lives. (A.R. 520.) The medical records also indicate that plaintiff did not take any medications from June 2007, through February 2008, because she did not have insurance. (A.R. 462.)

In reaching his determination that plaintiff had the severe mental impairments of anxiety disorder, not otherwise specified, and depressive disorder, not otherwise specified, the ALJ noted that plaintiff's "erratic treatment," as well as her lack of episodes of decompensation when not on psychotropic medication, might lead to the reasonable conclusion that plaintiff did not suffer from a severe mental impairment. (A.R. 414-15.) Despite his doubts, the ALJ ultimately concluded that plaintiff *did* suffer from the severe mental impairments of depression and anxiety based on the testimony of the medical expert

---

7   Although plaintiff alleged an inability to work since December 31, 1996 (A.R. 292), the decision focuses on a period from April 15, 2004, the protective filing date, through the date of the decision. (A.R. 419.)

19

and plaintiff's "somatic complaints." (A.R. 415)  The ALJ included the limitations set forth by the medical expert in his RFC determination, including precluding plaintiff from working at unprotected heights, around dangerous moving machinery, and on fast-paced work. (A.R. 416-17, 518.)  The ALJ also limited plaintiff to routine, repetitive, entry level work and "work involving things rather than people." (A.R. 417.)

Plaintiff's argument hinges on the ALJ's characterization of her medical treatment for her depression as "erratic." (A.R. 415.)  The term "erratic" is accurate in that plaintiff did not have consistent treatment for her depression but, read in the light most favorable to plaintiff, also could be interpreted to imply that plaintiff purposely failed to seek treatment when, in fact, she explained that there are no mental health specialists in her area. (A.R. 520.)  Even if the Court were to assume that the ALJ intended such an implication, however, any such implication did not affect the ultimate disability determination, because the ALJ did not rely on a lack of and/or "erratic" treatment as a basis for discounting plaintiff's subjective symptoms.[8]  Instead, the reason the ALJ did not fully credit plaintiff's subjective complaints was the lack of consequences and problems that arose during plaintiff's period of non-treatment.  The ALJ specifically noted that, in the year plaintiff underwent no treatment and failed to take any psychotropic medication, she experienced no episodes of decomposition or side

---

[8]  While lack of treatment can be a factor in credibility determinations, when a plaintiff provides a good explanation for the inconsistent treatment, the ALJ cannot reject the symptom testimony on that basis.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Even assuming that the ALJ improperly cited plaintiff's lack of treatment as a clear and convincing reason for rejecting her testimony, such error is harmless for the reasons cited above.  See Burch, 400 F.3d at 679.

1   effects.  (A.R. 415-17.)  Indeed, plaintiff testified that she never had

2   any "breakdowns" as a result of her depression.  (A.R. 522.)  The

3   absence of problems, both while plaintiff was under psychiatric

4   treatment and while she received no treatment, rather than the lack of

5   treatment itself, is a valid reason for discounting plaintiff's

6   subjective symptoms.  *See, e.g.*, <u>Burch</u>, 400 F.3d at 681 (affirming the

7   ALJ's reasons for rejecting plaintiff's testimony, including the fact

8   that plaintiff had no episodes of decompensation); <u>Collins v. Astrue</u>,

9   2009 WL 1202891, at *5 (C.D. Cal. Apr. 27, 2009) (finding the ALJ

10  properly discounted plaintiff's credibility regarding the severity of

11  her mental impairments in part because she had no episodes of

12  decompensation).

13

14       Further, the ALJ provided other clear and convincing reasons to

15  discount plaintiff's statements "concerning the intensity, persistence

16  and limiting effects of [her] symptoms . . . to the extent they are

17  inconsistent with" the RFC assessment.  (A.R. 417.)  First, the ALJ

18  stated that plaintiff did not testify to any serious limitation to her

19  daily activities imposed by her depression and anxiety, except that she

20  was nervous in public.  (A.R. 417, 522.)  While "[t]he Social Security

21  Act does not require that [plaintiff] be utterly incapacitated to be

22  eligible for benefits," <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.

23  1989), if the level of the activity is inconsistent with the alleged

24  limitations, such activities can have a bearing on a plaintiff's

25  credibility.  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  The

26  ALJ noted that plaintiff performed housework and took care of her two

27  granddaughters on a daily basis while her daughter attended school and

28

worked.[9]  (A.R. 416-17.)  *See* <u>Morgan v. Comm'r</u>, 169 F.3d 595, 600 (9th Cir. 1999)(affirming the ALJ's reasons for rejecting plaintiff's credibility, which included plaintiff's ability to occasionally provide child care services).  The ALJ further noted that there was no evidence that plaintiff "had any decompensation related to what amounts to the daily stress of being a child care provider." (A.R. 416.)

Second, the ALJ found that the medical record did not support plaintiff's subjective complaints. (A.R. 417-18.)  The ALJ stated that the medical records do not provide any consistent evidence of psychotic symptoms.  (A.R. 417.)  The ALJ noted that plaintiff's treating physician did not indicate any marked functional limitations and never referred plaintiff for more aggressive treatment by a specialist. (A.R. 415.)  The ALJ also relied on the testimony of Dr. Soltz, a medical expert who reviewed plaintiff's entire medical record and course of treatment, in concluding that, while plaintiff suffered from some sort of depressive and anxiety disorder, there were no signs of psychosis.[10] (A.R. 417-18, 516.)

---

9   In plaintiff's July 16, 2004 Mental Residual Functional Capacity Assessment, it was noted that plaintiff was living with her daughter and helping her with her newborn.  (A.R. 334.)  Additionally, at the August 5, 2008 hearing, plaintiff testified that she babysits her grandchildren when her daughter is at work and in school.  (A.R. 522.)

10  Although not given as a reason for discounting plaintiff's testimony, and therefore not relied upon here, the Court also notes that plaintiff's testimony regarding her weight gain was inconsistent with her medical records. <u>Thomas</u>, 278 F.3d at 958-59 (stating that an ALJ may consider a claimant's testimony and actual conduct in a credibility analysis).  As discussed *supra*, plaintiff testified that she gained forty pounds in the last couple of years as a side effect of her medications.  (A.R. 521-22.).  Plaintiff's medical records show that this statement is false.  Plaintiff has weighed approximately 200 pounds since 2002.  (*See* A.R. 130.)

Each of the above reasons is clear and convincing and, thus, the ALJ properly rejected plaintiff's testimony concerning her subjective symptoms.   Accordingly, plaintiff's complaint regarding the ALJ's characterization of her treatment for depression as "erratic" does not serve as any basis for finding reversible error.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error.  Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 30, 2010

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE